# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTUS NELSON, CDCR# C-66719,<br><br>        Plaintiff,<br><br>vs.<br><br>VICTOR M. ALMAGER, et al.,<br><br>        Defendants. | Civil No.  07-0958 L (RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 32] |

## I. Procedural Background

On May 24, 2007, Augustus Nelson ("Plaintiff"), a state prisoner currently incarcerated at the California Substance Abuse and Treatment Facility located in Corcoran, California, proceeding pro se and *in forma pauperis* ("IFP"), filed a Complaint pursuant to 28 U.S.C. § 1983. The Court conducted a sua sponte screening as required by the Prison Litigation Reform Act ("PLRA") and dismissed Plaintiff's Complaint for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2). *See* July 2, 2007 Order at 6. Plaintiff later filed his First Amended Complaint on October 4, 2007. Once again, the Court conducted the required screening and found that Plaintiff's First Amended Complaint failed to state a claim upon which relief could be granted. *See* Jan 10, 2008 Order at 5.

///

Plaintiff then filed his Second Amended Complaint ("SAC") on April 25, 2008. The Court found that Plaintiff's Fourteenth Amendment due process claims survived the sua sponte screening and directed the U.S. Marshal Service to effect service of Plaintiff's Second Amended Complaint on July 7, 2008. *See* July 8, 2008 Order at 4. In addition, Plaintiff was cautioned that the "sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Id.* at 3 (citing *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6) on October 8, 2008. Plaintiff later filed a "Motion for Extension of Time to File Response" which was granted by the Court and Plaintiff was given until December 1, 2008 to file his Opposition to Defendants' Motion. *See* Nov. 18, 2008 Order at 1. To date, Plaintiff has failed to file an Opposition. While this matter was referred to Magistrate Judge Ruben B. Brooks for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and S.D. CAL. CIVLR 72.3, the Court has determined that a Report and Recommendation regarding Defendants' Motion to Dismiss is unnecessary. *See* S.D. CAL. CIVLR 72.3(a) (unless all parties consent, dispositive motions filed in § 1983 prisoner cases are referred to magistrate judges for "proposed findings and recommendations to the district judge, *unless the district judge orders otherwise*.").

## II.     Factual Background

On October 12, 2005, Plaintiff was summoned to meet with his Correctional Counselor, Defendant Renteria, to conduct an "*Olsen* Review." An *Olsen* review is an administrative procedure that allows an inmate to review his central file ("c-file"). (SAC at 18.) This review was to prepare for Plaintiff's upcoming Parole Board hearing. (*Id.*) Plaintiff had previously requested a copy of the "Board of Prison Term Notice of Hearing Rights." (*Id.*) Defendant Renteria refused to give Plaintiff a copy and told Plaintiff he would have to obtain it directly from the Board of Prison Terms. (*Id.*)

Plaintiff alleges that Defendant Renteria then asked him "do you want to review your c-file or not." (*Id.* at 19.) Plaintiff indicated that he did want to review his c-file and asked for both volumes. (*Id.*) Renteria replied that "if you are requesting File Number 2, I will order it

1  when time permits." (*Id.*) Plaintiff responded by asking Renteria how would he be able to
2  prepare a Parole Board report if Renteria only had half of the information and said to Renteria
3  "man, you're a butthole." (*Id.*) Plaintiff then asked for a different correctional counselor to
4  prepare his Parole Board report because he believed Renteria displayed "a negative attitude
5  towards him," as well as speaking to him in a "belittling manner." (*Id.* at 19-20.) Renteria told
6  Plaintiff to leave his office. (*Id.*)

7  On October 17, 2005, Plaintiff was issued a CDC 115 "Serious Rules Violation Report"
8  in which he was charged with "disrespect towards staff." (*Id.* at 20.) The report was prepared
9  by Renteria. (*Id.*) Plaintiff claims he was denied the "prior notification process required before
10 being issued a misconduct rule violation report." (*Id.* at 21.) As a result of the disciplinary
11 action, Plaintiff was denied privileges, including yard activities, for a period of ninety days. (*Id.*)
12 Moreover, Plaintiff claims that the rules violation report authored by Renteria was the reason he
13 was denied parole. (*Id.* at 22.) In addition, Plaintiff claims Defendant Calderon, who is
14 responsible for classifying all rule violation reports, deliberately classified the disciplinary report
15 as serious when it should have been classified as "minor infraction." (*Id.* at 24.)

16 Defendant Fox was the hearing officer who presided over Plaintiff's disciplinary hearing
17 on October 19, 2005. (*Id.* at 25.) After hearing Plaintiff's not guilty plea, Defendant Fox found
18 Plaintiff guilty of a serious rules violation. (*Id.* at 26.) However, Plaintiff claims that Defendant
19 Fox did not rely on any "independent evidence of fact" to support his finding. (*Id.*) Plaintiff
20 also seeks to hold the remaining Defendants liable in their capacity to reduce the serious charge
21 to a "minor infraction" and for failing to overturn the disciplinary conviction.

22 **III.    Defendants' Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(6)**

23        **A.    FED.R.CIV.P. 12(b)(6) Standard of Review**

24 A motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) tests
25 the legal sufficiency of the claims in the complaint. The court must accept as true all material
26 allegations in the complaint, as well as reasonable inferences to be drawn from them, and must
27 construe the complaint in the light most favorable to the plaintiff. *N.L. Industries, Inc. v.*
28 *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d

1480, 1484 (9th Cir. 1995).

The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim, a complaint cannot be dismissed without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000) (en banc) (district court should grant leave to amend when complaint fails to state a claim "unless it determines that the pleading could not possibly be cured by the allegation of other facts" and if "it appears at all possible that the plaintiff can correct the defect") (citations omitted).

Where a plaintiff appears pro se, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). And, while liberal construction is "particularly important in civil rights cases," *Ferdik*, 963 F.2d at 1261, "[t]he plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

### B. Eleventh Amendment

Defendants seek dismissal of Plaintiff's claims for monetary damages to the extent that he is suing them in their "official capacity." *See* Defs.' Mot. at 3. While the Eleventh Amendment bars a prisoner's section 1983 claims against a state actor sued in his official capacity, it does not bar damage actions against a state official sued in his personal or individual capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992). When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

/ / / /

Here, Plaintiff brings this § 1983 suit against Defendants in their official capacities. (*See* SAC at 4-6.) The Eleventh Amendment imposes no bar to Plaintiff's damages action against Defendants for acts alleged to have been taken in their personal capacity. *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995). The Supreme Court has made it clear that a plaintiff can seek damages in a section 1983 action if he alleges facts sufficient to show personal liability through individual actions or omissions, taken under color of state law, which cause the deprivation of Plaintiff's constitutional rights. *Hafer*, 502 U.S. at 25.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss on Eleventh Amendment grounds only to the extent that Plaintiff seeks damages against them in their official capacities.

### C. Fourteenth Amendment Due Process Claims

Defendants seek dismissal of Plaintiff's Fourteenth Amendment due process claims. The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV. The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest is avoiding restrictive conditions of confinement is not

1 the language of regulations regarding those conditions but the nature of those conditions
2 themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 221
3 (quoting *Sandin*, 515 U.S. at 484)  The *Sandin* test requires a case-by-case examination of both
4 the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*,
5 515 U.S. at 486.

6       Accordingly, under *Sandin*, the Court must determine whether Plaintiff has alleged facts
7 sufficient to show that the ramifications of his disciplinary conviction "imposes atypical and
8 significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.
9 In *Sandin*, the Court found there were three factors to consider when determining whether
10 disciplinary segregation imposes atypical and significant hardship: "(1) disciplinary segregation
11 was essentially the same as discretionary forms of segregation; (2) a comparison between the
12 plaintiff's confinement and conditions in the general population showed that the plaintiff
13 suffered no "major disruption in his environment"; and the length of the plaintiff's sentence was
14 not affected." *Jackson v. Carey*, 353 F.3d 750, 755 (quoting *Sandin*, 515 U.S. at 486-87).

15       Defendants do not argue that Plaintiff has failed to allege a protected liberty interest.
16 Thus, the Court finds that Plaintiff has alleged facts sufficient to show that denial of parole and
17 the loss of privileges as described in his Second Amended Complaint constitute an atypical and
18 significant hardship in relation to the ordinary incidents of prison life giving rise to a liberty
19 interest. *Sandin*, 515 U.S. at 483.

20       Now the Court must determine whether Plaintiff has sufficiently alleged facts that his
21 due process rights were violated at his disciplinary hearings. *Wilkinson*, 545 U.S. at 225.
22 "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of
23 rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 539. Due process
24 in connection to a disciplinary hearing requires that the prisoner receive: 1) written notice of the
25 charges against him; 2) a brief period of time to prepare for the hearing; 3) a written statement
26 by the factfinder regarding the facts relied upon and the reasons for the disciplinary action; 4)
27 an opportunity to call witnesses and present documentary evidence; and 5) an opportunity to
28 seek the aid of a fellow inmate or prison staff for complex matters. *Id.* at 563-70.

1  / / / /

2  Here, Plaintiff alleges in his Second Amended Complaint that he did receive a copy of the serious rules violation report that detailed the charges against him two days prior to the disciplinary hearing. (*See* SAC at 20.) However, Plaintiff goes on to claim that Defendant Fox violated his due process rights because he "did not produce at the hearing any independent evidence of fact to support the finding of guilt." (*Id.* at 26.) This "independent evidence" claim is not one of the factors found in *Wolff*. Plaintiff does not allege that he did not have time to prepare for his hearing. Plaintiff does allege that Defendant Fox relied on the report by Renteria to find Plaintiff guilty which would satisfy the written statement requirement. (*Id.*) Plaintiff does not allege that he was denied the opportunity to call witnesses, present evidence or seek the aid of a fellow inmate or prison staff to help him prepare for the hearing. Instead, Plaintiff's allegations rest on his disagreement with the guilty finding and continued argument that the rules violation should have been reduced to a minor offense. Accordingly, the Court finds that Plaintiff has failed to allege any facts to show that Defendants did not meet the standards as set forth by *Wolff*. Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment due process claims pursuant to FED.R.CIV.P. 12(b)(6).

### D. Fourteenth Amendment Equal Protection Claims

Defendants also seek dismissal of Plaintiff's Fourteenth Amendment equal protection claims on the grounds that he has failed to allege any facts to support this claim. (*See* Defs.' Mot. at 20.) The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993).

However, conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show

that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff's only allegation with respect to this claim appears to be that Defendants denied him equal protection of the law when they "intentionally ignored the rules and regulations of the Secretary of the California Department of Corrections and Rehabilitation." (SAC at 58.) Plaintiff's Second Amended Complaint is devoid of allegations that he was discriminated against in any manner. Thus, Plaintiff has plead no facts from which the Court could find he has stated a Fourteenth Amendment equal protection claim. Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Equal Protection claim pursuant to FED.R.CIV.P. 12(b)(6) is **GRANTED**.

### E.     First Amendment Retaliation Claims

Defendants also seek dismissal of Plaintiff's retaliation claims. In his Second Amended Complaint, Plaintiff alleges that he was "penalized" for "exercising his right to free speech." (*See* SAC at 49.) A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts to show: (1) he was retaliated against for exercising his constitutional rights, (2) the alleged retaliatory action "does not advance legitimate penological goals, such as preserving institutional order and discipline," *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam), and (3) the defendants' actions harmed him. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Thus, the burden is on the prisoner to allege facts which demonstrate "that there were no legitimate correctional

purposes motivating the actions he complains of." *Id.* at 808.

Here, Plaintiff is, in essence, challenging the prison's rules and regulations which found him guilty of a serious rules violation. *See* Cal.Regs. Title 15 § 3315(a)(3)(H) (serious rule violations include "acts of disobedience or disrespect which by reason of intensity or context create a potential for violence or mass disruptive conduct.") Plaintiff admits in his Second Amended Complaint that he called the correctional counselor a derogatory name. What Plaintiff is, in essence, arguing is that Defendants retaliated against him by failing to reduce the charge to a minor offense. While Plaintiff has stated in conclusory terms that there was no legitimate penological purpose for the Defendants' action, he has not alleged any facts to show that the Defendants actions lacked or failed to advance "legitimate penological goals such as preserving institutional order and discipline." *Barnett*, 31 F.3d at 815-16; *Pratt*, 65 F.3d at 808; *Bruce*, 351 F.3d at 1289. For all these reasons, Defendants' Motion to Dismiss Plaintiff's retaliation claims is **GRANTED** for failure to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6).

### F. Eighth Amendment Claims

Plaintiff also claims that his Eighth Amendment rights were violated and "incorporates by reference the allegations contained in paragraphs 1 through 180 of Count 3." (SAC at 59.) Defendants move to dismiss these claims on the grounds that Plaintiff has "failed to allege any facts that would support such a claim." (Defs. Mot. at 15.) "The Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must allege facts which demonstrate that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state of mind" in denying him proper medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component

1  to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.
2  2002). The objective requirement is met if the prison official's acts or omissions deprived a
3  prisoner of "'the minimal civilized measure of life's necessities.'" *Allen v. Sakai*, 48 F.3d 1082,
4  1087 (9th Cir. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[E]xtreme
5  deprivations are required to make out a conditions-of-confinement claim." *Hudson v.*
6  *McMillian*, 503 U.S. 1, 9 (1992).

7  "The subjective requirement, relating to the defendant's state of mind, requires deliberate
8  indifference." *Allen*, 48 F.3d at 1087; *Farmer*, 511 U.S. at 834. "[A] prison official cannot be
9  found liable under the Eighth Amendment for denying an inmate humane conditions of
10 confinement unless the official knows of and disregards an excessive risk to inmate health or
11 safety; the official must both be aware of facts from which the inference could be drawn that a
12 substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S.
13 at 837; *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002). Here,
14 Plaintiff has failed to allege any facts sufficient to state an Eighth Amendment. While he makes
15 references to a denial of privileges, he does not state in any detail how the loss of these
16 privileges resulted in cruel and unusual punishment. There are no facts from which the Court
17 could find that any Defendant was "deliberately indifferent" to Plaintiff.

18 Thus, Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims pursuant to
19 FED.R.CIV.P. 12(b)(6) is **GRANTED**.

20 **G.     Qualified Immunity**

21 Defendants also seek dismissal of Plaintiff's Second Amended Complaint on qualified
22 immunity grounds. However, because the Court has dismissed the entirety of Plaintiff's action,
23 the Court need not reach any issues regarding qualified immunity. *See County of Sacramento*
24 *v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the
25 defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the
26 deprivation of a constitutional right at all."); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001)
27 ("If no constitutional right would have been violated were the allegations established, there is
28 no necessity for further inquiries concerning qualified immunity.").

////

**H.    State Law Claims**

Defendants also seek dismissal of Plaintiff's claim brought pursuant to California state law.  Because the Court must dismiss all Plaintiff's federal claims for all the reasons set forth in the Order, it will exercise its discretion under 28 U.S.C. § 1367(c)(3).   Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over state law claims when the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Generally, dismissal of federal claims before trial dictates that state pendent claims should be dismissed.  *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1995).  Accordingly, Plaintiff's pendent state law claims are DISMISSED without prejudice.

**IV.    Conclusion**

For all the reasons set forth above, the Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiff's Second  Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 32].  Moreover, because the Court finds amendment of Plaintiff's § 1983 claims would be futile at this time, leave to amend is **DENIED.**  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile); *see also Robinson v. California Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, this action should be dismissed without leave to amend; any amendment would be futile.") (citing *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996)).

The Clerk of Court shall close the file.

**IT IS SO ORDERED**.

DATED: February 6, 2009

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

1  ALL PARTIES/COUNSEL